UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBIN MARIE BECHTEL,

    Plaintiff

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

Civil Action No. 13-12324

HON. PATRICK J. DUGGAN
U.S. District Judge
HON. R. STEVEN WHALEN
U.S. Magistrate Judge

_____/

## REPORT AND RECOMMENDATION

Plaintiff Robin Marie Bechtel ("Plaintiff") brings this action under 42 U.S.C. § 405(g) challenging a final decision of Defendant Commissioner denying her application for Supplemental Security Income ("SSI") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

## PROCEDURAL HISTORY

On August 30, 2010, Plaintiff filed an application for SSI, alleging an onset of disability date of December 4, 2009 (Tr. 124-129). After the initial denial of the claim, Plaintiff filed a request for an administrative hearing, held on November 21, 2011 in Flint, Michigan before Administrative Law Judge ("ALJ") Kevin W. Fallis (Tr. 31). Plaintiff,

represented by attorney Daniel Pollard, testified, as did Vocational Expert ("VE") Jacquelyn Schabacker (Tr. 38-57, 57-63).  On December 12, 2011, ALJ Fallis found Plaintiff not disabled (Tr. 27).  On March 28, 2012, the Appeals Council denied review (Tr. 1-4). Plaintiff filed for judicial review of the final decision in this Court on May 24, 2013.

## BACKGROUND FACTS

Plaintiff, born April 27, 1962, was 49 when the ALJ issued his decision (Tr. 27, 124). She completed high school (Tr. 150) and worked previously as a housekeeper (Tr. 150-151). She alleges disability as a result of syncope, various heart conditions, hepatitis C, osteoporosis, and rheumatoid arthritis (Tr. 149).

**A. Plaintiff's Testimony**

Plaintiff offered the following testimony:

She lived with her husband in a one-story home in Clio, Michigan (Tr. 38-39).  Her husband was also disabled (Tr. 39).  Her own condition prevented her from caring for him (Tr. 39).  Due to her limited mobility, she had gained 20 pounds in the past two years (Tr. 40).  She held a current driver's license but seldom drove (Tr. 40).  She generally relied on her husband to drive her to doctor's appointments and shopping (Tr. 41).

Plaintiff dropped out of high school but later obtained a high school diploma (Tr. 41). She denied additional job training or military service (Tr. 42).  She worked at Bavarian Inn Lodge in Frankenmuth, Michigan as a housekeeper until weight loss as a result of hepatitis C required her to quit (Tr. 42).  Her current medical care was limited to visits with her family doctor (Tr. 43).   She had not attended physical therapy because it was not covered by her health insurance (Tr. 43).  Current medication side effects were limited to feeling "a little dizzy at first" (Tr. 44).

Plaintiff was unable to work due to joint stiffness concentrated in the lower

extremities as well as upper extremity weakness (Tr. 46). Circulation and problems causing dizziness prevented her from standing for extended periods (Tr. 46). Hepatitis C "flare ups" were characterized by nausea (Tr. 47). She was unable to lift more than 10 pounds, sit for more than 30 minutes, stand for more than 15, or walk for more than 30 (Tr. 47-48). She also experienced right wrist weakness (Tr. 48). She performed household chores at her own pace with frequent break time between activities (Tr. 49). Physical problems prevented her from gardening or doing other outdoor chores (Tr. 49). She spent most of her waking hours studying and watching daytime television (Tr. 50). In the evening, she and her husband watched television shows together (Tr. 50). She did not experience problems following story lines (Tr. 51). Reading caused headaches and eye strain (Tr. 51).

Plaintiff experienced difficulty getting dressed and performing grooming activities (Tr. 51). She used a computer approximately once a month to check on Facebook activities, but keyboarding created wrist pain (Tr. 53). She experienced interrupted sleep and did not sleep more than four hours each night (Tr. 53). Urinary urgency and leg pace caused sleeping disturbances (Tr. 54). She napped for approximately half an hour each day (Tr. 54). She did not attend church or participate in any organizations (Tr. 55). She had not smoked for the past six years and had not used alcohol since 1994 (Tr. 55).

B.   Medical Evidence[1]

1. Treating Records

Diagnostic remarks accompanying a May, 2009 chest x-ray acknowledge a diagnosis of Chronic Obstructive Pulmonary Disorder ("COPD") but note clear lungs and no

---

[1] Conditions unrelated to the claim for benefits have been reviewed but are omitted from the present discussion.

enlargement of the heart (Tr. 192). Notes by family physician Brian Beck, D.O. from the same month state that Plaintiff reported weakness and back, hip, knee, and shoulder pain (Tr. 181). November, 2009 treating notes by Derek N. Korte, D.O. of Flint Gastroenterology Associates state that Plaintiff experienced epigastric bloating and nausea as well as fatigue (Tr. 164). He noted that Plaintiff contracted hepatitis C following a transfusion following childbirth (Tr. 164, 171-172). An imaging study of the liver showed unremarkable results (Tr. 193-194). He described Plaintiff as a "stay-at-home housewife" (Tr. 164). The following month, cardiologist James L. Chamber, D.O. noted cardiac testing performed in response to complaints of dizziness showed the presence of mild aortic insufficiency and mild diastolic dysfunction" (Tr. 166). A stress test was unremarkable (Tr. 167-169). Notes by Dr. Beck from the same month note that Plaintiff continued to report body pain and headaches (Tr. 178).

In January, 2010, Plaintiff reported back and hip pain (Tr. 205). An x-ray of the lumbar spine showed "mild anterior lipping" but no other abnormalities (Tr. 213). A May, 2010 x-ray of the right ankle taken in response to Plaintiff's reports of joint pain was negative (Tr. 204, 212). July, 2010 notes by Ali Kamar, M.D., examining Plaintiff at the request of Dr. Beck, state that she demonstrated 5/5 muscle strength in all extremities (Tr. 214-215). She exhibited a mildly antalgic gait but did not require the use of a cane or walker (Tr. 214). Dr. Kamar noted crepidation of both knees (Tr. 215). He noted "multiple sites" of osteoarthrosis (Tr. 215). Dr. Beck's November, 2010 treating records state that Plaintiff did not experience respiratory distress (Tr. 200).

In November, 2011, Dr. Beck opined that Plaintiff was limited to less than 10 pounds lifting on an occasional basis; standing for less than two hours in an eight-hour workday; and sitting for less than six (Tr. 219). He also found moderate limitations in pushing and pulling

in all extremities (Tr. 219).

### C. Vocational Expert Testimony

VE Jacquelyn Schabacker classified Plaintiff's previous work as a housekeeper as exertionally light and unskilled[2] (Tr. 58). The ALJ then described a hypothetical individual of Plaintiff's age, educational level, and work experience:

> [T]his individual would be able to perform work at the light level which is lift up to 20 pounds occasionally, lift/carry up to 10 pounds frequently. Stand/walk for about four hours and sit for up to six hours in an eight hour workday with normal breaks. This individual could never climb ladders, ropes, or scaffolds. they could occasionally climb ramps or stairs, occasionally balance, stoop, kneel, crouch, and crawl. This individual would have to avoid all exposure to excessive vibration, avoid even moderate exposure to environmental irritants such as fumes, odors, dust, and gases. They would have to avoid all use of moving machinery, and avoid all exposure to unprotected heights. Could this individual perform the claimant's past work as actually or generally performed? (Tr. 59).

The VE testified that the individual could not perform any of Plaintiff's past relevant work, but could perform a limited range of light, unskilled work of an information clerk (1,500 jobs in the lower peninsula of Michigan); cashier (7,000); and bench assembler (2,000) (Tr. 60). The VE testified further that if the individual were limited to sedentary work involving lifting up to 10 pounds occasionally, standing or walking for two hours, and sitting for up to six hours, the above-cited jobs would be precluded, but the same individual could perform the job of surveillance system monitor (1,000); document preparer (500); and

---

[2] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

inspection sorter (3,500) (Tr. 61). The VE testified that the need to be off task for 20 percent of the work day, or, the need to miss two days of work each month due to "doctor visits, symptoms, and side affects of medications" would preclude all work (Tr. 61-62).

### D. The ALJ's Decision

Citing the medical records, ALJ Fallis determined that Plaintiff experienced the severe impairments of "arthritis; hepatitis C; osteoporosis; mild aortic insufficiencies; mild diastolic dysfunction and [COPD]," but that none of the conditions met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 21, 23). He found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work with the following additional restrictions:

> [W]ould require a job that would incorporate never climb ladders, ropes or scaffold; occasionally climb ramps or stairs; occasional balancing, stooping, kneeling, crouching and crawling. Avoid all exposure to excessive vibration, all use of moving machinery, all exposure to unprotected height; and even moderate exposure to environmental irritants such as fumes, odors, dusts and gases (Tr. 24).

Citing the VE's testimony, the ALJ found that although Plaintiff was unable to perform her former job as a housekeeper, she could work as a surveillance system monitor, document preparer, and inspection sorter (Tr. 26).

The ALJ found Plaintiff's allegations of limitation "not credible" to the extent they were inconsistent with the RFC (Tr. 25). He noted that Plaintiff did not see her physician more than once every three months and was able to drive and perform household tasks (Tr. 25). He observed that Plaintiff's alleged need for daily naps was unsupported by any of the treating records (Tr. 25). Contrary to the claims of significant lower extremity weakness, the ALJ noted that Plaintiff did not require the use of a walker or cane (Tr. 25). He cited

imaging studies showing that symptoms of COPD were mild and clinical studies showing 5/5 muscle strength (Tr. 25).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less than a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In

evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### Plaintiff Has Not Established That a Remand Is Warranted

Plaintiff argues that the hypothetical question to the VE did not account for her full degree of impairment. *Plaintiff's Brief* at 6-15, *Docket #9.* She contends, in effect, that the omission of some of her alleged physical limitations from the hypothetical question invalidates the Step Five finding that she was capable of performing a range of sedentary work. *Id.* at 6 (citing *Felisky v. Bowen,* 35 F.3d 1027 (6th Cir. 1994)).

Plaintiff does not identify any specific deficiencies in the hypothetical question. Instead, she contends that critical omissions in the hypothetical question stem from the ALJ's erroneous credibility determination. She faults the ALJ for rejecting her testimony of disabling upper body weakness, generalized fatigue, and dizziness. *Plaintiff's Brief* at 10-11.

The credibility determination, guided by SSR 96-7p, describes a two-step process for evaluating symptoms. "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . .that can be shown by medically

acceptable clinical and laboratory diagnostic techniques." 1996 WL 374186 at *2. The second prong of SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the testimony must be evaluated "based on a consideration of the entire case record."*Id.* [3]

The ALJ's credibility determination and by extension, the choice of hypothetical limitation, is well supported and explained. He acknowledged Plaintiff's reports of dizziness, disabling fatigue, nausea, joint pain, and wrist problems (Tr. 22), but noted that her alleged degree of limitation was contradicted by the treating records. He observed that Plaintiff's complaints of chronic joint and respiratory problems were undermined by her October, 2009 denial of physical problems other than bloating, nausea, and fatigue (Tr. 22, 164). He cited May, 2009 imaging studies of the liver showing unremarkable results (Tr. 22, 193-194). He noted that cardiac studies showed only mild aortic insufficiency and diastolic dysfunction (Tr. 22). In further support of his rejection of disability claims, the ALJ also cited Dr. Kamar's July, 2010 findings of clear lungs, full muscle strength, and Plaintiff's

---

[3]In addition to an analysis of the medical evidence, C.F.R. 404.1529(c)(3) lists the factors to be considered in making a credibility determination:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms ... and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

ability to walk without the use of an assistive device (Tr. 23, 214). While Plaintiff points to studies showing "low normal" bone density of the lumbar spine, *Plaintiff's Brief* at 11, other evidence, such as imaging studies of the lumbar spine showing essentially negative results, supports the conclusion that osteoarthritis did not preclude sedentary work (Tr. 213). Because the ALJ's credibility determination was supported by substantial evidence, he did not err in excluding all of the professed claims from the hypothetical limitations. See *Stanley v. Secretary of Health and Human Services,* 39 F.3d 115, 118-119 (6th Cir.1994)(ALJ not obliged to include properly discredited allegations of limitation in hypothetical to VE).

Plaintiff's "hypothetical question" argument also contains a long recitation of case law regarding the "treating source rule," but does not state how the ALJ erred in the analysis of Dr. Beck's November, 2011 opinion.[4] *Plaintiff's Brief* at 12-14. Elsewhere in her brief, Plaintiff does cite Dr. Beck's opinion that she was limited to less than 10 pounds lifting on an occasional basis; standing for less than two hours in an eight-hour workday; and sitting for less than six. *Plaintiff's Brief* at 11 (citing Tr. 219). The treating physician "argument"

---

[4] If the opinion of the claimant's treating physician is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." See *Hensley v. Astrue,* 573 F.3d 263, 266 (6th Cir.2009) (internal quotation marks omitted) (citing *Wilson v. CSS*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2)). However, in the presence of contradicting substantial evidence, the ALJ may reject all or a portion of the treating source's findings, see *Warner v. Commissioner of Social Sec.,* 375 F.3d 387, 391–392 (6th Cir.2004), provided that he supplies "good reasons" for doing so. *Wilson*, at 547; 20 C.F.R. § 404.1527(c)(2)). In explaining reasons for rejecting the treating physician opinion, the ALJ must consider "the length of the ... relationship and the frequency of examination, the nature and extent of the treatment [,] ... [the] supportability of the opinion, consistency ... with the record as a whole, and the specialization of the treating source." *Wilson*, at 544.

is unavailing, even assuming that the isolated citation to Dr. Beck's opinion (considered in tandem with the later recitation of the treating physician rule) could be construed as a separate argument for remand. The ALJ supported his rejection of Dr. Beck's opinion by citing Dr. Kamar's findings of full muscle strength, no wheezing, and normal muscle tone as well as numerous, unremarkable imaging studies (Tr. 22-23). The ALJ's citation to evidence either undermining or contradicting Dr. Beck's disability constitutes "good reasons" for rejecting the treating opinion. 20 C.F.R. § 404.1527(c)(2)). As required by the same regulation, the ALJ also considered the length, frequency, and nature of the treating relationship (Tr. 21). Because the treating physician analysis is well articulated and supported, remand on this basis is not warranted.

In closing, I find that the ALJ's determination that Plaintiff was capable of performing a significant range of sedentary work was comfortably within the "zone of choice" accorded to the fact-finder at the administrative hearing level. *Mullen v. Bowen*, *supra*. However, I note that Plaintiff was less than five months short of her 50th birthday at the time of the administrative decision. "Under the Social Security Administration's regulations, a person (1) who is 'closely approaching advanced age' (that is, a person between the ages of fifty and fifty-four . . . ), (2) who has a high school education that does not provide for direct entry into skilled work, and (3) whose previous work experience was skilled or semiskilled work that is not transferable to other jobs in the national economy, is generally considered disabled . . . if her impairments limit her 'maximum sustained work capability' to sedentary work." *Rogers v. CSS,* 2000 WL 799332, * 1 (6th Cir. June 9, 2000). Plaintiff, now "closely approaching advanced age," is not prevented from reapplying for benefits if she believes she is still disabled.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: June 23, 2014

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on June 23, 2014, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager to the
Honorable R. Steven Whalen
